IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT W.,

          Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

CIVIL ACTION FILE NO.

1:18-CV-0998-JFK

## FINAL OPINION & ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration ("SSA") which denied his

application for disability insurance benefits ("DIB"). For the reasons set forth below,

the Court **REVERSES** and **REMANDS** to the Commissioner for further proceedings.[1]

## I.   Procedural History

The claimant filed an application for a period of DIB on February 23, 2015,

alleging that he became disabled on July 17, 2013. [Record ("R.") 166–74 / Exhibit

1D]. After his application was denied initially and on reconsideration, an

administrative hearing was held by video conference on May 15, 2017. [R. 32–52].

---

[1] The Commissioner elected to forego oral argument.

An impartial Vocational Expert ("VE"), Lane Westcott, was present and testified at the hearing. The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application on September 12, 2017, and the Appeals Council denied Plaintiff's request for review on February 21, 2018. [R. 1–6, 12–31]. Plaintiff filed his complaint in this court on March 8, 2018, seeking judicial review of the Commissioner's final decision. [Doc. 1]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II. Facts

The decision of the ALJ [R. 17–26] states the relevant facts of this case as modified herein as follows:

The claimant alleges disability since July 17, 2013, due to degenerative disc disease, diabetes mellitus, obesity, obstructive sleep apnea, generalized anxiety disorder, major depressive disorder, and attention deficit hyperactivity disorder ("ADHD").

Claimant's Hearing Testimony

During the hearing, the claimant testified to measuring approximately 69 inches tall and weighing approximately 310 pounds. He described his primary symptoms as follows: chronic neck, back, shoulder, and knee pain, decreased range of motion in his shoulder (e.g., cannot shave himself), burning/tingling/stinging of the extremities due

2

to neuropathy (prescribed Gabapentin), chronic headaches, difficulty bending, difficulty lifting/reaching, difficulty ambulating, fluctuating blood sugar levels, difficulty with attention/concentration (prescribed Adderall), a long history of frequent panic attacks (prescribed Klonopin), chronic underlying anxiety, social withdrawal, difficulty working/getting along with others, and sleep disturbance. The claimant testified that he experiences drowsiness as a side effect of his medications. He stated that he must lie down due to exhaustion, especially on days when he has to leave the house for medical appointments and the like.

The claimant testified that he had suffered from chronic pain for approximately ten years. [R. 39]. He was previously administered injections in his shoulder and reported needing shoulder surgery. [R. 39]. According to the claimant, his pain is present "all the time" and not only during exertion. [R. 39]. He stated that his left shoulder pain was due to arthritis that needed to be scraped and that the pain in his neck, lower back, and knees was caused by his diabetic neuropathy. [R. 39 ("From the knees down, I'm burning all the time. And it goes into my hands too.")]. Plaintiff testified that he had been taking medication to help his pain for over eight years. He takes a high dose of Lortab (an opioid) and muscle relaxers. [R. 40].

The claimant uses "a grabber thing" for reaching and picking things up. [R. 40]. He represented that he has used a cane on and off for around five years. [R. 40–41].

3

Plaintiff brought the cane with him to the video hearing. [R. 41]. Without use of the cane, Plaintiff stated that he could typically only walk about four or five feet. [R. 41].

At the time of the hearing, the claimant was living with his girlfriend, and the claimant reported that his girlfriend does basically everything. [R. 42]. For instance, given his difficulty bending and reaching, the claimant's girlfriend helps him get his shoes and socks on and even helps him in the restroom. [R. 42]. The claimant has a friend come over to cut his hair and shave him once every couple of weeks. [R. 42].

According to the claimant, he has experienced "problems all [his] life with anxiety, but . . . kept it hid [sic]" until he got older and was faced with other medical conditions. [R. 43]. The claimant testified that being around people terrifies him and that his anxiety and panic interfered with his job at Avon. [R. 43]. He takes Klonopin for anxiety and testified that, without it, he cannot function at all and would have multiple panic attacks. [R. 44].

The claimant testified that he does not participate in activities outside of the house and that his typical day consists of watching TV. [R. 44, 46]. He lays down and props his head up with a pillow to watch TV between 65 and 70 percent of the time. [R. 47]. If he is required to be out of the house, he is exhausted by the time he gets back home and has to lay down as soon as he returns. [R. 47].

Medical Evidence of Record

4

The evidence of record reflects primary care notes from Kaiser Permanente ("KP"). On the alleged onset date of July 17, 2013, the claimant presented to KP with decreased neck range of motion. However, he exhibited full, painless lumbar range of motion with no tenderness. Straight leg raise tests were negative although a leg lift test was positive for low back pain. He displayed full range of motion of the hips and knees. Motor, sensation, and gait findings were normal. Cervical spine x-rays showed no significant abnormalities. In contrast, lumbar spine x-rays revealed facet arthropathy at L4-L5 with no significant change since comparison imaging from 2007. The lumbar spine otherwise showed normal alignment, normal curvature, and preserved disc heights. [Exhibit 2F at 135].

As seen at KP through early 2015, the claimant intermittently reported moderate pain and / or was seen for routine, acute matters. [Exhibit 2F at 9, 36]. On most occasions, however, physical exam findings were generally unremarkable. [Exhibit 2F at 13, 19, 44, 75, 80–81, 89]. On at least one occasion, sacroiliac tenderness was present, but lumbar, gait, motor, and sensation findings were normal. [Exhibit 2F at 53]. KP records also reflect a history of panic attacks. [Exhibit 2F at 5–9].

In March 2015, KP records reflect an exacerbation of back pain reportedly caused by overexertion when the claimant helped some people move the previous week. The claimant was already taking prescribed Hydrocodone and Soma, but he

"self increased" his dosage "based on need." On examination, he appeared "unwell" and seemed to be "in moderate to severe pain." He demonstrated decreased range of motion of the neck and lower back with "[t]ender knotted musculature." The provider continued the claimant on oral medications. [Exhibit 4F at 1–7].

On April 23, 2015, John Shih, D.O. ("Dr. Shih"), performed a consultative "all systems" examination of the claimant. On examination, head, ear, eye, nose, and throat findings were within normal limits. As for cardiovascular findings, Dr. Shih noted "1+ edema" of the lower extremities with left leg varicosities and claudications. All other cardiovascular findings were unremarkable. Pulmonary and chest findings were unremarkable. Abdominal findings were normal. The "claimant allege[d]" tenderness of both knees, both wrists, both elbows, and the right shoulder. There was tenderness to palpation of the cervical, thoracic, and lumbosacral spines. The claimant's gait was wide-based and antalgic, and he presented with the use of a cane. However, the claimant was able to get on and off of the exam table independently and successfully heel-to-toe walk. He demonstrated only mild (four out of five, or 4/5) deficits of motor strength. Likewise, he demonstrated 4/5 handgrip strength, which is typically considered only a mild deficit despite being documented as "moderate." Notably, the claimant demonstrated full (5/5) pinch strength bilaterally. Range of motion was decreased in most areas, and the claimant indicated that he was unable to

6

complete back range of motion testing. Dr. Shih observed signs of depression but nonetheless found the claimant to be fully oriented with no memory problems. [Exhibit 3F at 1–6]. Dr. Shih opined that the claimant could perform activities of daily living. Dr. Shih further opined that the claimant needed assistance with personal care tasks once per week, that he could not reach, push, or pull due to back pain, that he could not stand for long periods of time due to back pain and leg cramps, and that he could not bend at the waist or turn his head. Dr. Shih cited various findings and subjective reports in support of these opined limitations, including leg cramps, decreased range of motion of the bilateral ankles, decreased range of motion of the bilateral hips, positive sitting and supine straight leg raising, decreased range of motion of the bilateral shoulders, "severely decreased" neck and back range of motion, and decreased strength. Finally, Dr. Shih indicated that the claimant experienced "anxiety and panic attacks due to traumatic past." [Exhibit 3F at 6].

The claimant returned to KP in early May 2015 for a routine follow-up visit. He reported that he felt jittery on Celexa and inquired about splitting his dosage. The provider agreed and made this change. Objective exam findings were completely normal, and the provider continued the claimant on conservative treatment with medications. [Exhibit 4F at 13–21].

On May 7, 2015, Norman Lee, Ph.D. ("Dr. Lee"), performed a consultative psychological evaluation of the claimant. [Exhibit 5F]. The claimant reported that his primary mental difficulties involved anxiety and attention / concentration deficits. The claimant reported that he rarely socializes with others and that he has one close friend, and he reported difficulties with socialization and getting along with others due to his anxiety around crowds. The claimant endorsed a history of childhood trauma due to both witnessing traumatic events, including the death of his father (homicide), and suffering abuse. He endorsed ongoing symptoms since that time, including excessive generalized worry, restlessness, fatigue, concentration problems, irritability, difficulties with sleep, panic attacks, and frequent racing thoughts. Dr. Lee observed clinical signs, including a markedly anxious mood, restricted affect, and a tense appearance. The claimant's performance on objective testing "suggested weaknesses in his global cognitive functioning." [Exhibit 5F at 4]. Mental status exam findings were variable but mostly fair. Dr. Lee found the claimant "sincere in his presentation" and consistent throughout the evaluation with "no significant evidence of any exaggeration or magnification of symptoms." [Exhibit 5F at 3]. Dr. Lee assessed the claimant with generalized anxiety disorder and rule-out borderline intellectual functioning and recommended more comprehensive psychological testing to confirm suspected borderline intellectual functioning. [Exhibit 5F at 4]. Dr. Lee noted that the claimant's

8

prognosis related to his psychological conditions was "guarded, given the longstanding nature of his mood difficulties." [Exhibit 5F at 4]. Dr. Lee opined that the claimant was capable of understanding, remembering, and carrying out basic directions but mildly to moderately limited in doing so with more complex directions, moderately limited in concentrating, persisting, or maintaining pace on "more difficult tasks," moderately to markedly limited in interacting adequately with coworkers and the general public, and moderately to markedly limited in adapting to work-related stressors. [Exhibit 5F at 4].

The claimant returned to KP three times in August 2015. On August 6, 2015, the claimant reported frequent panic attacks and said that his Celexa was not working. He appeared anxious and stressed but exam findings were otherwise unremarkable. The claimant was continued on prescription medication. [Exhibit 6F at 30–37]. On August 24, 2015, he presented for his first behavioral health visit with Rick Stallings, M.D. ("Dr. Stallings"). A mental status exam and diagnostic screening yielded variable results. Dr. Stallings assessed the claimant with major depressed disorder, generalized anxiety disorder, and panic disorder, and he assigned the claimant a Global Assessment of Functioning ("GAF") rating of 55, which is generally indicative of

AO 72A
(Rev.8/82)

moderate overall functional limitations at the time of assessment.[2]  Dr. Stallings

prescribed continued treatment with Citalopram and Clonazepam, at increased dosages.

[Exhibit 6F at 38–41].  Three days later, on August 27, 2015, the claimant returned for

a primary care check-up with Sean Murphy, M.D. ("Dr. Murphy"), and physical exam

findings were normal throughout though chronic lower back pain was noted.  Dr.

Murphy noted, "General Impression: Healthy adult male. Normal [p]hysical."  Dr.

Murphy continued the claimant on a conservative treatment regimen with several

medications.  [Exhibit 6F at 42–48].

On September 15, 2016, Dr. Stallings verified his treatment of the claimant since

August 2015 for major depression, generalized anxiety disorder, and panic disorder.

[Exhibit 8F].  According to Dr. Stallings, the claimant's "conditions are chronic and

severe, and result in significant impairment in functioning." [Exhibit 8F at 1].  Dr.

Stallings opined as follows:

_____

[2] GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social and occupational functioning."  American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 1994) (DSM-IV).  A GAF of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, familiar relations, judgment, thinking, or mood.  Id.  A score between 41 and 50 indicates serious symptoms, such as suicidal ideation, serious impairment in social, occupational or school functioning.  Id.  A score between 51 and 60 indicates moderate symptoms, such as occasional panic attacks or moderate difficulty in social, occupational or school functioning.  Id.

AO 72A
(Rev.8/82)

These conditions, and the medications necessary for treatment, contribute to great difficulty with memory and attention. [The claimant] is unable to tolerate crowds of people, and in past workplace experiences, he had such severe anxiety and panic, which worsened into paranoia. In my opinion, he is impaired due to disabilities and cannot work, and cannot be trained to do new work. Based upon his history and ongoing conditions, this disability is permanent.

[Exhibit 8F at 1].

In March 2017, the claimant returned to KP and was seen by both Dr. Murphy and Dr. Stallings. Dr. Murphy noted that the claimant's pain was adequately controlled on his prescribed medications and that no new symptoms were present. The claimant rated his pain at a severity level of six on a scale of one to ten with ten being the most severe pain (or 6/10). New labs showed an A1C of 7.1 and "some diabetic kidney damage," however, Dr. Murphy identified no corresponding symptoms. Dr. Murphy concluded, "On current medication regimen, the patient appears well controlled." [Exhibits 9F at 2–5; 10F at 1–4]. Dr. Stallings' records do not include his narrative report. Nonetheless, this documentation notes ongoing panic attacks and treatment with a regimen of four mental health medications: Klonopin for panic symptoms, Adderall for attention/concentration deficits, Celexa for depression and underlying anxiety, and Trazodone for sleep disturbance. [Exhibit 11F at 2–3].

The claimant returned to KP in April 2017 with complaints of shortness of breath. Lung function testing was documented to be abnormal, although the

11

corresponding report was not included. The provider recommended daily exercise and nightly use of the claimant's CPAP. [Exhibit 10F at 5–6].

VE Testimony

To determine the extent to which these limitations erode the unskilled light occupational base, the ALJ asked the VE whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity ("RFC"). The VE testified that, given all of these factors, the individual would be able to perform the requirements of representative occupations such as: Photocopy Machine Operator (DOT # 207.685-014, Light Unskilled / SVP 2, with 65,000 jobs in the national economy); Hand Packer (DOT # 559.687-074, Light Unskilled / SVP 2, with 89,000 jobs nationally); and Garment Sorter (DOT # 222.687-014, Light Unskilled / SVP 2, with 54,000 jobs nationally). Based on the testimony of the VE, the ALJ concluded that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

Additional facts will be set forth as necessary during discussion of Plaintiff's claims.

AO 72A
(Rev.8/82)

## III.  Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards."  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment

13

for that of the [Commissioner].'" <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability. <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not engaged in substantial gainful activity. <u>See</u> <u>id.</u> The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments. <u>See</u> <u>id.</u> At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience. <u>See</u> <u>id.</u> "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work." <u>Doughty</u>, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to

14

consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work." Id. If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the SSA through December 31, 2018.

2.    The claimant has not engaged in substantial gainful activity since July 17, 2013, the alleged onset date.  [20 C.F.R. §§ 404.1571, *et seq*.].

3.    The claimant has the following severe impairments: degenerative disc disease, diabetes mellitus, obesity, obstructive sleep apnea, generalized anxiety disorder, major depressive disorder, and attention deficit hyperactivity disorder.  [20 C.F.R. §§ 404.1520(c)].

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526].

5.    The claimant has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he can never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, or crawl; occasionally reach overhead with the bilateral upper extremities; must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and workplace hazards; can understand, remember, and carry out simple instructions only; and can only occasionally have contact with the public.

15

6.  The claimant is unable to perform any past relevant work. [20 C.F.R. § 404.1565].

7.  The claimant was born on May 18, 1974, and was 39 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. [20 C.F.R. § 1563].

8.  The claimant has at least a high school education and is able to communicate in English. [20 C.F.R. § 404.1564].

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. [See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2].

10. Considering the claimant's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the claimant can perform. [20 C.F.R. §§ 404.1569 and 404.1569(a)].

11. The claimant has not been under a disability, as defined in the SSA, from July 17, 2013, through September 12, 2017 (the date of the decision). [20 C.F.R. § 404.1520(g)].

[R. 17–19, 25–26].

## V.  Discussion

On appeal, Plaintiff asserts that the ALJ committed reversible error by improperly evaluating the medical opinion evidence. More specifically, Plaintiff claims that, while discounting the opinions of Plaintiff's long-time treating psychiatrist, primary care providers, and consultative examiners, the ALJ relied on the medical

16

opinions of the state agency reviewing psychologists without reconciling those opinions and their proposed mental limitations with the RFC determination.[3]

Social Security Ruling 96-8p provides, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

Eleventh Circuit law is clear that an ALJ cannot reject portions of a medical opinion without providing a reasoned explanation for doing so. See Winschel v. Comm'r of Social Security, 631 F.3d 1176, 1178–79 (11th Cir. 2011); see also Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987). Accordingly, in the Eleventh Circuit, when an ALJ assigns *great* (or significant) weight to a medical opinion, he is required to adopt the limitations contained in the opinion or explain why he is discounting the limitations. See Watkins v. Comm'r of Social Security, 457 Fed. Appx. 868, 871–72 (11th Cir. 2012) (finding that the ALJ erred when he "gave great weight to Dr. Feussner's RFC evaluation" but failed to incorporate the physician's "sit/stand limitation into his RFC finding or to give a reason for not doing so"); see also Rosario v. Comm'r of Social Security, 2014 WL 667797, at *3 (M.D. Fla. February 20, 2014)

---

[3] Plaintiff also challenges the ALJ's evaluation of the opinion evidence relating to physical limitations which the Court need not reach.

(citations omitted) ("Having given significant weight to Dr. Bartlett's opinion, the ALJ should have provided a reasoned explanation as to why she did not include or otherwise account for [the limitation found by the physician] in her RFC determination or in her hypothetical questions to the VE.").

In the present case, the ALJ's RFC assessment conflicts with the opinions of the state agency psychologist consultants Allen Carter, Ph.D. ("Dr. Carter'), and James Mullins, Ph.D. ("Dr. Mullins"), despite the ALJ stating that he gave "significant weight" to the opinions. [R. 24]. Plaintiff's medical records were reviewed by Dr. Carter on May 22, 2015, for Initial Review, and again on September 3, 2015, on Reconsideration by Dr. Mullins. [R. 65–67, 85–87 / Exhibits 1A, 3A]. Dr. Carter opined that Plaintiff had social interaction limitations, including being "Moderately limited" in the ability to interact appropriately with the general public; and "Not significantly limited" in the ability to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. [R. 67]. Dr. Carter further opined that Plaintiff was "Moderately limited" in his ability to respond appropriately to changes in the work setting. [R. 67]. In summary, Dr. Carter wrote in part, "Claimant has moderate

18

reduction in ability to interact with large groups and co workers but [claimant] is able to interact with supervisors appropriately." [R. 67]. On reconsideration, Dr. Mullins agreed and adopted Dr. Carter's opinion with no substantive changes. [R. 85–87]. Plaintiff contends that the proposed functional limitation concerning his ability to interact with coworkers was not included in the ALJ's RFC determination and that the ALJ's failure to include it was not adequately explained by the ALJ as required by SSR 96-8P.

The ALJ assigned "significant" weight to the opinions of Drs. Carter and Mullins, the state agency psychological consultants who opined that the claimant was moderately limited in social functioning and moderately limited in the realm of concentration, persistence, and/or maintaining pace. [R. 24 (citing Exhibits 1A at 9–10; 3A at 10–11)]. The ALJ then explained as follows:

> This view is generally consistent with the claimant's longitudinal treatment records, which, while documenting ongoing mental health symptoms and the need for several prescribed medications, nonetheless suggest [that] the general effectiveness of said medications and the absence of any debilitating symptomatic exacerbations during the relevant period. For these reasons, the state agency psychological consultants' assessments are given significant weight.

[R. 24]. However, the ALJ's RFC assessment did not include any social interaction limitation for coworkers and only limits Plaintiff to "occasional . . . contact with the public." [R. 19]. The ALJ failed to explain why he did not credit the coworker

19

limitation found by Dr. Carter, namely, Plaintiff's "moderate reduction in ability to interact with . . . co[ ]workers[.]" [R. 24]. The Commissioner acknowledges that the ALJ's RFC determination did not encompass a limitation for interaction with coworkers. [Doc. 13 at 9]. According to the Commissioner, however, the ALJ's omission does not constitute reversible error.

First, the Commissioner suggests that there is no inconsistency (factually) between the state agency psychological consultants' mental RFC opinions and the ALJ's RFC. [Doc. 13 at 9–10]. According to the Commissioner, because Drs. Carter and Mullins did not find *significant* limitations in Plaintiff's ability to engage in social interactions generally and did not specifically characterize the coworker or peer limitation as *significant*, that the narrative explanation stating that the claimant has *moderate* reduction in ability to interact with large groups and coworkers is entirely reconcilable with the ALJ's RFC. [Doc. 13 at 9–10]. The Commissioner relies on the overall mental RFC opinion proffered by Drs. Carter and Mullins instead of only considering the summary of mental limitations.[4] See Denomme v. Comm'r, Social

_____

[4] Plaintiff contends that the responses of Drs. Carter and Mullins to specific questions asking about various restrictions on the RFC assessment form (i.e., where Dr. Carter indicates that the claimant is "[n]ot significantly limited" in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes) are not part of the actual RFC opinion, which is found in the narrative summary of all a claimant's mental limitations. [Doc. 14 at 2–3].

<u>Security Admin.</u>, 518 Fed. Appx. 875, 878 (11th Cir. 2013) (no reversible error where psychologist opined claimant had moderate limitations in ability to relate to coworkers but no significant limitations in social interactions such that the overall opinion of the state agency psychological consultant was properly considered).[5] At the same time, the Commissioner acknowledges the lack of clarity in its attempt to justify the ALJ's omission of any coworker limitation. The Commissioner states in its brief:

> Because Drs. Carter and Mullins specifically found that Plaintiff was not significantly limited in the ability to get along with coworkers, **it is not clear** that they considered Plaintiff moderately limited in the ability to relate to coworkers. . . . Moreover, **it is also not clear** what portion of their moderate reduction statement applies to large groups as opposed to coworkers or if they were indicating Plaintiff would have an issue interacting with a large number of coworkers or more than one coworker at a time.

---

[5] "[I]n <u>Denomme</u>, the court concluded that the ALJ's failure to specify the weight given to the opinions of the examiners was harmless because the examiners' findings were credited in the RFC . . . ." <u>Johnson v. Colvin</u>, 2016 WL 1211960, at *12 (N.D. Ga. March 28, 2016) (finding <u>Denomme</u> distinguishable). The facts in <u>Denomme</u> can also be distinguished from this case in that the limitation regarding interaction with coworkers proffered by Drs. Carter and Mullins is *not* incorporated into the RFC. As previously stated, the coworker limitation is found within the sole medical opinion concerning non-exertional limitations credited by the ALJ and assigned significant weight. Moreover, "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." <u>Bonilla v. Baker Concrete Constr., Inc.</u>, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

AO 72A
(Rev.8/82)

[Doc. 13 at 10–11 (emphasis provided)].[6]

Next, the Commissioner cites Newberry v. Comm'r, Social Security Admin., 572 Fed. Appx. 671 (11th Cir. 2014), in support of its argument that Dyer v. Barnhart[7] does not require the ALJ to specifically refer to every aspect of a medical opinion (i.e., here, coworker limitation). [Doc. 13 at 11 (citing Newberry, 575 Fed. Appx. at 672)]. In Newberry, the appellate court relied on Dyer to uphold the ALJ's denial of benefits and to reject the claimant's argument that the ALJ's failure to discuss a physician's finding that the claimant would need to lie down periodically during the workday required remand. Id. at 672. The panel deemed any error in the ALJ's decision for failing to explicitly assign weight to and discuss every aspect of the doctor's opinion harmless given that the ALJ's rejection of certain portions of the medical opinion deemed inconsistent with the ALJ's ultimate conclusion was supported by substantial evidence. Id. (citing Diorio v. Heckler, 721 F.2d 726, 726 (11th Cir. 1983)). The Commissioner's harmless error argument is not persuasive on this record.

_____

[6] Although stated differently, having a "Moderate limitation" and a "Not significantly limited" finding are not necessarily contradictory. Relying on ordinary meanings, in terms of the level or degree of limitation, both would seem to fall somewhere in the middle.

[7] See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

22

The weight of the opinion evidence, if credited, regarding Plaintiff's mental impairments and attendant functional limitations is that Plaintiff's limitations are more severe than the limitations found by Drs. Carter and Mullins. As previously discussed, the ALJ did not credit the opinion of Dr. Stallings, the treating psychiatrist – a board certified specialist – who opined that the claimant's mental health conditions were "chronic and severe" and caused "significant impairment in functioning" and that claimant was "unable to tolerate crowds of people."[8] [Exhibit 8F at 1]. The ALJ likewise discounted Dr. Lee's CE opinion, which stated that, given Plaintiff's anxiety, the claimant was "moderately to markedly limited" in interacting adequately with coworkers and the general public. [Exhibit 5F at 4]. Plaintiff contends that the ALJ's evaluation of the non-examining state agency psychologists' opinions is that much *more critical* than in other cases. [Doc. 14 at 4]. Indeed, Plaintiff highlights the third hypothetical posed to the VE during the administrative hearing which contemplated a claimant who was limited to "occasional contact not only with the public, but also with coworkers and supervisors, and that they cannot on a consistent basis, maintain their

---

[8] "New regulations eliminated the treating physician rule last year, see 20 C.F.R. § 404.1520c, but the rule is effective only for claims filed after March 27, 2017 . . . . For claims . . . that were filed before March 27, 2017, the rules in § 404.1527 continue to apply." Rainey v. Berryhill, 731 Fed. Appx. 519, 523 n.2 (7th Cir. 2018).

AO 72A
(Rev.8/82)

attention and concentration for two-hour periods of time." [Doc. 10 at 11 (quoting R. 50)].[9] And Plaintiff contends that the error is not harmless in that his ability to deal with coworkers is a basic requirement of work. [Doc. 14 at 3 (citing 20 C.F.R. §§ 404.1522(b)(5))].

As discussed, the Commissioner articulates a number of reasons why it was proper for the ALJ not to include the state agency psychologists' proposed limitation as to social interaction with coworkers in the RFC. [Doc. 13 at 9–11 (contending in part that "it is not clear" what portion of the "moderate reduction" was meant to apply to coworkers such that this and other "seeming internal inconsistenc[ies]" justify the ALJ's exclusion); Doc. 14 at 2 (identifying post-hoc justification by Commissioner)]. However, the Court must evaluate the ALJ's decision based on the reasoning provided by the ALJ in his written decision. As the Eleventh Circuit wrote in Owens v. Heckler,

---

[9] Concerning the VE's testimony and the third hypothetical, there is no way to determine the impact of the two additional proposed mental limitations, one concerning the ability to interact with coworkers and supervisors, and the second limitation concerning maintaining attention and concentration. In discussing the Paragraph B criteria at step three of the sequential evaluation process, admittedly a different inquiry, the ALJ determined that, "[i]n interacting *with others*, the claimant has moderate limitations." [R. 18 (emphasis provided)]. The Paragraph B criteria are used to rate the severity of mental impairments at steps two and three. [R. 19]. The mental RFC assessment used for purposes of steps four and five requires a more detailed assessment. [R. 19].

748 F.2d 1511, 1516 (11th Cir. 1984), "We decline . . . to affirm simply because some rationale might have supported the ALJ's conclusion. Such an approach would not advance the ends of reasoned decision making." The ALJ may have had a legitimate reason supported by the record for not including in the RFC the coworker limitation found by Drs. Carter and Mullins. [Doc. 13 at 9–11]. But without an explanation from the ALJ, the court is unable to determine whether the ALJ's mental RFC finding with no limitation as to Plaintiff's social interaction with coworkers was based on substantial evidence and a proper application of the law. See Watkins, 457 Fed. Appx. at 871-72; Rosario, 2014 WL 667797, at *3.[10] The ALJ did not offer any reasons for implicitly rejecting the portions of the state agency psychological consultants' opinions concerning social interaction with coworkers, and the court is not permitted to rely on *post hoc* arguments presented by the Commissioner. In light of these facts, the Court finds that remand is warranted.

---

[10] In Rosario, the court found reversible error where the ALJ had given significant weight to a medical opinion but failed to include portions of the same opinion into the RFC. 2014 WL 667797, at **2–3. The Rosario court acknowledged that an "ALJ is not required to include every limitation into his . . . RFC determination simply because he . . . assigned great or significant weight to a medical opinion." Id., at *2 (citing 20 C.F.R. § 404.1527(e)(2)(i)). However, "the ALJ . . . is required to provide a reasoned explanation as to why he . . . chose not to include particular limitations in his . . . RFC determination." Id. (citations omitted).

AO 72A
(Rev.8/82)

## VI.    The Court Does Not Reach Plaintiff's Other Issues

Because the undersigned finds that this case must be remanded for further proceedings that could result in another administrative hearing and could impact the ALJ's assessment of Plaintiff's RFC, the court finds it unnecessary to address Plaintiff's remaining objections.  See Demenech v. Secretary of the Dep't of Health and Human Services, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that most of plaintiff's arguments did not need to be addressed because remand was warranted on a significant issue); Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (finding it unnecessary to address most of the issues raised by the plaintiff because they were likely to be reconsidered on remand); Decaro v. Acting Comm'r of Social Security Admin., 2017 WL 1130746, at *6 (M.D. Fla. March 27, 2017) (declining to address claimant's remaining arguments on appeal where remand on RFC issue might result in change in RFC); Walker v. Astrue, 2013 WL 5354213, at *19 n.22 (N.D. Ga. September 24, 2013) ("Because it is recommended that this case be remanded for further proceedings that could impact the ALJ's assessment of claimant and Shaw's credibility, her RFC, and her ability to perform other work in the national economy, the Court need not address the remaining issues raised by the claimant."). "However, the Commissioner will be directed to reconsider all evidence,

26

including the new evidence made part of the record, in rendering a decision." <u>Cooper</u> <u>v. Acting Comm'r of Social Security Admin.</u>, 2017 WL 1135088, at \*5 (M.D. Fla. March 27, 2017).

## VII.  Order

For the above reasons and authority, the Court finds that substantial evidence does not support the ALJ's denial of DIB in this case and was the result of a failure to apply the proper legal standards.  The Court hereby **GRANTS** Plaintiff's Motion [Doc. 10] for Remand and **ORDERS** that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings in accordance with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS FURTHER ORDERED** that, in the event that benefits are awarded to Plaintiff upon remand, Plaintiff's attorney be permitted to file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty (30) days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees.  Defendant's response, if any, shall be filed no later than

AO 72A
(Rev.8/82)

thirty days after Plaintiff's attorney serves the motion on Defendant.  Plaintiff shall file

any reply within ten days of service of Defendant's response.

**SO ORDERED THIS** 20th day of August, 2019.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)